[Civ. No. 1916. Fourth Appellate District.—July 13, 1936.]

OLIVE MILLER, Plaintiff and Appellant, v. EMMA ROACH et al., Defendants; HARRY F. WEBER, Jr., et al., Defendants and Appellants.

C. A. Ballreich for Plaintiff and Appellant.

Martin Gang for Defendants and Appellants.

TURRENTINE, J., *pro tem.*—Emma Roach executed a note secured by mortgage on real estate for $5,800 to the plaintiff, Olive Miller. Thereafter, she and the defendants

Weber entered into "exchange escrow instructions" wherein it was agreed that "for the purpose of effecting an exchange of properties hereinafter described", which "exchange escrow instructions" was made for the purpose, among other things, of exchanging the property which was the security on the notes and mortgage to the plaintiff. The escrow instructions then set forth "its [the property's] appraised value and the value of the equity conveyed". The agreement or "exchange escrow instructions" provided that the property was "subject to: mtg. for $5,800, at 8 per cent quarterly, due about 1928 in favor of Olive Miller. Appraisal value $28,800.00. Value of equity $17,534.67." The "exchange escrow instructions" providing for the exchange of the property from the Webers to Roach was in identical form except as to the names, descriptions and figures; the "value of equity" in each instance was substantially the same, any difference being adjusted between the parties. The "exchange escrow instructions" also provided that "assurance of title" should be furnished "with liabilities limited to the respective appraisal values above expressed". Pursuant to the "exchange escrow instructions" Roach deeded the property to the Webers by deed containing the following provision: "subject to a mortgage of record for $5,800.00 in favor of Olive Miller". About the time the mortgage fell due, Olive Miller and Mr. Weber of the Webers above referred to executed an agreement as follows:

"This Agreement made between Olive Miller, mortgagee, and Harry F. Weber, Jr., mortgagor. It is understood and agreed between the above parties that the mortgage covering the property recorded in Book 5388, page 319, of official records of Los Angeles County, is hereby extended for a period of three years from October 9, 1928, in accordance with all terms and conditions now provided in said mortgage.

"OLIVE MILLER,
"HARRY F. WEBER, JR."

In 1932, plaintiff instituted this action to foreclose her mortgage, alleging that defendant Weber assumed and agreed to pay the mortgage and seeking deficiency judgment against the Webers in case the sale of the property did not satisfy the mortgage. The judgment so provided and defendants Weber appeal.

The sole evidence bearing on the question involved is contained in the written documents above abstracted.

We think it clear from the exchange agreement that it contemplates an exchange of equities and not a sale of the property. While there could be an assumption of the mortgage outside of the exchange agreement and deeds, yet where the only evidence is the documentary evidence it must control. There is certainly nothing in the exchange agreement expressly assuming the mortgage. It says the purpose is to exchange the properties and the "value of the equity conveyed" and "subject to" the mortgage. The deed likewise recites "subject to" the mortgage. While these expressions are not always conclusive or controlling where the only evidence is as contained in the written documents, something must be contained in the documents from which it can be said that the vendee of mortgaged property assumed and agreed to pay the debt. This has been done where the transaction is a sale of property for a full value and the amount of the incumbrance deducted from the purchase price.

Where the transaction is an exchange of equities, as we construe the transaction here involved, this is not so. "Where the transaction is only an exchange of equities in mortgaged lands there is not a sufficient consideration for the assumption of personal liability by the purchaser." (Jones on Mortgages, 8th ed. [1928], vol. 2, sec. 938.) "If there is nothing in the deed itself clearly indicating an assumption by the grantee of the debt secured by the mortgage, and there is no written agreement extrinsic to the deed to that effect, then proof by parol testimony that such an agreement was made must be clear or of the most satisfactory character. As stated, no express parol agreement was shown." (*Brichetto* v. *Raney,* 76 Cal. App. 232, 247 [245 Pac. 235].)

We think this is the correct rule and applicable to the instant case. The "exchange escrow instructions" and the deed do not show an assumption of the debt and no deficiency judgment could be based thereon, in the absence of a legal written or oral agreement extraneous thereto which are not present in this case. (See *Fishback* v. *J. C. Forkner Fig Gardens,* 137 Cal. App. 211 [30 Pac. (2d) 586].)

■ Plaintiff relies upon the so-called extension agreement quoted herein as entitling her to a deficiency judgment against the Webers, Mr. Weber being designated as mortgagor, and he obtaining and signing the extension agreement which extended the time to pay the debt. While the defendant challenges the validity of the extension agreement for want of consideration, we think there was a consideration on each side. An agreement of the mortgagee to extend the time of payment without a new and valuable consideration is invalid for want of consideration (*Braun* v. *Crew,* 183 Cal. 728 [192 Pac. 531]), but where the mortgagor or the grantee of the mortgagor and the mortgagee by mutual written agreement agree to an extension of the mortgage, the mortgagee in effect agreeing not to foreclose for a definite extended period and the mortgagor or grantee of the mortgagor agreeing not to pay for the same extended period, there is a definite mutual consideration passing from one to the other. Their legal rights are altered. The mortgagee has the right to have the investment remain fixed for the extended period and to receive interest for the full extended period and the mortgagor or his grantee has the right to defer the payment of the principal sum for the same extended period. However, the agreement does not by its terms or by fair implication show an assumption by the Webers of an agreement to pay the note and mortgage. He had sufficient interest in the land to make an extension agreement without such agreement in itself creating an assumption and an agreement to pay the debt. (*Curtis* v. *Holee,* 184 Cal. 726 [195 Pac. 395, 18 A. L. R. 1024].) While by such an agreement Weber could assume and agree to pay the debt, we do not think he did so in accordance with the terms of the extension agreement herein.

■ Plaintiff argues that as the title ''Assurance'' was to be for the appraisal value, that this shows the transaction to be a sale and not an exchange of equities. We do not think it has the effect contended for nor does it change the written agreement of the parties. One who exchanges equities realizes that he must pay existing incumbrances to keep the property and would logically want protection to the value of the property when it is clear of incumbrances. But this does not say he assumes and agrees to pay the incumbrances.

Clearly, the plaintiff is not entitled to a deficiency judgment against the defendants Harry F. Weber, Jr., or E. Grace Weber, or either of them.

Plaintiff has appealed from that portion of the judgment denying a deficiency judgment against the defendant Roach, the original mortgagor. Inasmuch as she had conveyed the property to the Webers prior to the execution of the extension agreement above referred to she was a surety only and as she did not consent to the extension of the mortgage, her liability for a deficiency judgment was discharged on the execution thereof. (*Braun* v. *Crew, supra.*)

That portion of the judgment from which the plaintiff appeals is affirmed. That portion of the judgment providing that the plaintiff recover of defendants Harry F. Weber, Jr., and E. Grace Weber a deficiency judgment, if the proceeds of the sale are insufficient to pay the amount due plaintiff, is reversed.

Barnard, P. J., and Marks, J., concurred.